UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOSEPH SAVOIE | * | CIVIL ACTION NO. 20-2294 |
| | * | |
| VERSUS | * | SECTION: "H"(1) |
| | * | |
| INLAND DREDGING COMPANY, LLC | * | JUDGE JANE T. MILAZZO |
| | * | |
| | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************ | * | |

ORDER AND REASONS

Before the court is plaintiff Joseph Savoie's Motion to Quash and/or Motion for Protective Order concerning a subpoena for the cell phone records of a non-party. (Rec. Doc. 52). Because portions of the documents requested by the subpoena are relevant and proportional to the needs of the case, the Motion is GRANTED in part and DENIED in part. Only records from February 2018 through March 2022 shall be produced and the irrelevant portions of the records shall be redacted as further provided below.

Background

This is a Jones Act case. When he filed this lawsuit, Savoie alleged that was injured on or about February 1, 2018, while assisting in the repair of a shaft that had broken aboard the M/V INGENUITY near Port Arthur, Texas. He alleges he was putting the main pump back together when suddenly and without warning, he injured his back. He did not report the injury at the time it occurred and continued working for Inland Dredging Company, LCC—the owner/operator of the vessel—for eleven months thereafter.

Documents produced in discovery revealed that the incident could not have occurred in February 2018. Savoie now asserts that he was injured in May 2018 while installing an impeller. During his deposition, Savoie testified that his accident was only witnessed by the vessel's

engineer Mike Smith. He testified that the he had only mentioned the back injury to his brother-in-law Thomas Marks.

On March 21, 2022, Kirk Hamlett—described as "a long time friend and hometown (Arnoudville) associate of Savoie" by Inland—testified that he, not Smith, was helping Savoie reinsert a dredge impeller and that Smith was on the other side of the impeller guiding it in place. This is contrary to Savoie's testimony that only Smith witnessed the incident. Significantly, Inland's documents and the testimony of Smith show that Smith was not on the dredge at that time.

During Hamlett's deposition, Inland asked when Savoie had first contacted him about the incident. He said Savoie first called him a year earlier, then he called Savoie about three months before the deposition, and they last spoke one week before the deposition. Counsel asked whether Hamlett's cell phone records would be consistent with his testimony, and he agreed that they would be.

Inland issued a subpoena to Verizon for Hamlett's cell phone records. Savoie filed the present Motion to Quash and/or Motion for Protective Order. The parties dispute the relevance of the documents.

Law and Analysis

1. *Legal Standard*

Under Rule 45, the Court may quash or modify a subpoena that "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception of waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. Proc. 45(d)(3); see Wiwa v. Royal Dutch Petroleum Co., 392 F.3d 812, 817–18 (5th Cir. 2004). The moving party bears the burden of showing that compliance with the subpoena would be unduly burdensome.

Wiwa, 392 F.3d at 818; Informd, LLC v. DocRX, Inc., No. MC 16-83-JJB-EWD, 2016 WL 7478962, at *3 (M.D. La. Dec. 29, 2016). In assessing the undue burden, the Court considers "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." Wiwa, 392 F.3d at 818.

In assessing the relevance of the information sought, the Court is guided by the scope of discovery announced by Federal Rule of Civil Procedure 26(b)(1). See Hahn v. Hunt, No. CV 15-2867, 2016 WL 1587405, at *1 (E.D. La. Apr. 20, 2016), aff'd, No. CV 15-2867, 2016 WL 6518863 (E.D. La. Nov. 2, 2016) (quoting Garvin v. S. States Ins. Exchg. Co., No. 1:04cv73, 2007 WL 2463282, at *5 n.3 (N.D. W. Va. Aug. 28, 2007) ) (explaining that as with other discovery devices, a Rule 45 subpoena is "subject to the parameters established by Rule 26") Am. Fed'n of Musicians of the United States & Canada v. Skodam Films, LLC, 313 F.R.D. 39, 44–45 (N.D. Tex. 2015) (alteration in original) (quoting Williams v. City of Dallas, 178 F.R.D. 103, 110 (N.D. Tex. 1998)) (concluding that ""[w]hen a subpoena is issued as a discovery device, relevance for purposes of the undue burden test is measured according to the standard of [Federal Rule of Civil Procedure] 26(b)(1)). Rule 26 provides that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. Proc. 26(b)(1).

A protective order limiting the discovery of otherwise discoverable information will only be issued on a showing of good cause. Fed. R. Civ. P. 26(c). "The burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." United States v. Garrett, 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978)

*2. Analysis*

Under the circumstances of this case, the requested records are relevant and highly important. Hamlett's account of the incident differs from that of Savoie and both of their stories are inconsistent with the records and testimony of Smith. While Inland's description of Hamlett and Savoie's relationship may be overstated, there is certainly reason to question the nature of that relationship through the timing, frequency, and duration of their telephone communications. Additionally, there is reason to question Hamlett's reliability in describing their communications. Whether the cell phone records ultimately shed light on these questions is not an issue now before the court. The court is convinced, however, that they are discoverable.

Throughout this case, the court has allowed discovery of documents well beyond the originally alleged incident date as Savoie sought to pinpoint when it occurred. The court will not now bar Inland from exploring the veracity of Savoie's witnesses' testimony. The court finds the information sought is relevant and discoverable and that complying with the subpoena would not impose an undue burden. Further, Savoie has not established good cause to preclude discovery of the documents entirely.

The court notes that Savoie does not have standing to assert Hamlett's privacy interest in the cell phone records. Nonetheless, the court recognizes that Hamlett, a non-party to this litigation, has a valid privacy interest in his cell phone records and as a non-party lay person, he may have been unaware of the existence of the subpoena or his ability to challenge it in court. The court will impose the following limits on the subpoenaed documents. First, the subpoena has no time frame. Hamlett's cell phone records are only relevant from February 2018—the date originally alleged for the incident—through the date of the request.[1] Accordingly, the court limits

---

[1] It is unlikely that Verizon keeps cell phone records in perpetuity, so there may be a practical limit to the records Verizon can produce. These ordered limits apply only to the extent Verizon is able to produce records in excess of

the subpoena to records from February 2018 through March 2022. Further, the records will be subject to the following protections: Inland will redact all references to phone numbers other than Savoie's phone number and Hamlett's phone number as well as any billing information. Inland will not take notes or otherwise memorialize any information regarding the redacted information. It will destroy all unredacted versions of the records. It will produce a copy of the redacted version to Savoie.

## Conclusion

Because the court finds Hamlett's cell phone records are relevant and proportional to the needs of the case insofar as they are dated between February 2018 and March 2022 and insofar as they reflect communications between Hamlett and Savoie, the Motion to Quash and Motion for Protective Order are GRANTED in part and DENIED in part. The subpoena is modified to apply only to records from February 2018 through March 2022 and the parties may only use those entries reflecting communications between Savoie and Hamlett, as further provided in this Order and Reasons.

New Orleans, Louisiana, this 27th day of April, 2022.

*Janis van Meerveld*
Janis van Meerveld
United States Magistrate Judge

---

them. To the extent the records have already been produced to Inland, Inland's counsel will destroy any records in excess of the limits imposed by the court.